UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARENCE H., | ) |
| Plaintiff, | ) |
| | ) No. 20-cv-3107 |
| v. | ) |
| | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clarence H. ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") to deny his application for disability benefits. For the following reasons, Plaintiff's motion for summary judgment is granted (Dkt. 18),[1] the Commissioner's motion for summary judgment is denied (Dkt. 21), and the case is remanded for further proceedings consistent with this opinion.

**I.  Background**

Plaintiff filed an application for disability and disability insurance benefits on September 7, 2016, alleging a disability onset date of July 7, 2016. (R. 86.) The claim was denied initially on October 21, 2016, and upon reconsideration on March 1, 2017. (*Id*.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 31, 2018. (*Id*.) On April 17, 2019, ALJ Margaret A. Carey issued a decision finding Plaintiff not disabled. (R. 86-96.) Plaintiff requested Appeals Council review, which was denied on March 24, 2020. (R. 1-7), Plaintiff appealed the ALJ's decision to this Court on May 26, 2020. (Dkt. 1.)

The ALJ issued a written decision following the five-step sequential process required by

---

[1] Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security (dkt. 18), which the Court construes as a Motion for Summary Judgment.

20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since his alleged onset date. (R. 88.) At step two, the ALJ concluded that Plaintiff has the severe impairments of aortic aneurysm, Marfan syndrome, and obesity. (R. 89.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (*Id*.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, crawling; never climbing ladders, ropes, or scaffolds; occasional exposure to extreme cold or heat; no exposure to unprotected heights, hazardous machinery, or driving of a motor vehicle; a 15-minute break every two hours, which can be accommodated by routine breaks; and he would need to be allowed to elevate his legs to a 45-degree angle during the workday. (R. 91.) At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as a coil tester. (R. 94.) Because of this finding, the ALJ did not need to proceed to step five. These findings led the ALJ to conclude that Plaintiff is not disabled as defined by the Social Security Act. (R. 96.)

Plaintiff has undergone several cardiac surgeries. In 2007, when he was 20 years old, he had surgery to repair an aortic aneurysm which was found during a routine physical. (R. 348.) It appears from the record that he recovered well from that surgery, as he was working at a job that required heavy lifting and prolonged standing as of May 10, 2016. (R. 348.) However, at that time, he was experiencing fatigue, back pain, dizziness and shortness of breath. (R. 348.) Three months later, Plaintiff continued to suffer from shortness of breath as well as nausea and vomiting with exertion, and an echocardiogram showed prosthetic stenosis and regurgitation. (R. 403.) As a result, Plaintiff had aortic valve replacement surgery on August 27, 2016 to fix his 2007 aortic graft and valve replacement, which had calcified during the intervening nine

years. (R. 404-405.) As of May 2017, Plaintiff continued to suffer from chest pain that he described as being similar to the pain he had prior to his 2016 aortic valve replacement surgery; however, his CT scans and echocardiograms were normal, and the doctors believed his chest pain was due to an upper respiratory infection. (R. 937-39.) In June 2018, Plaintiff complained of radiating chest pain; a CT scan showed an aortic dissection starting at the left aortic arch, and Plaintiff underwent a fenestration surgery of the dissection on June 11, 2018. (R. 1057-1058.) Following surgery, Plaintiff spent approximately 3.5 weeks as an impatient at Northwestern Memorial Hospital until he was discharged to Acute Inpatient Rehab at the Shirley Ryan Ability Lab in stable condition on July 3, 2018. (R. 1057-1058.) Prior to his discharge, Plaintiff was intubated for approximately the first week of the postoperative period, and tube fed for the second week, before resuming a normal diet on the fourteenth day after his surgery. (R 1058.) He discharged from inpatient rehab on July 13, 2018; the discharge notes indicate he was able to transfer from a bed to chair independently, walk 1,000 feet, turn while walking, pick up objects independently, go from lying to sitting to standing independently, get in an out of a car without assistance, and climb 30 stairs with modified independence. (R 1545.)

As part of the record, Plaintiff submitted opinion evidence from his primary care physician, Dr. Kishore Khankari, M.D.; Dr. Khankari completed a Cardiac Residual Functional Capacity Questionnaire (the "Questionnaire") on May 30, 2017 and penned an opinion letter (the "Letter") on July 17, 2018. (R. 850, 870.) In the Questionnaire, Dr. Khankari listed Plaintiff's symptoms as shortness of breath, fatigue, weakness, dizziness, and sweatiness, and noted that his prognosis was "poor." (R. 850.) He further opined that Plaintiff could sit for 45 minutes at one time, could not stand during the work day, would need to take unscheduled breaks every 30 minutes, would need to elevate his legs for one hour a day, and could never lift more than 10 pounds. (R. 852.) In the Letter, Dr. Khankari noted that Plaintiff suffered "from Marfan

3

syndrome, congestive heart failure, dissection of aorta, kidney failure, mechanical aortic valve replacement, [and] malignant hypertension." (R. 870.) Due to his "multiple medical problems," Dr. Khankari opined that Plaintiff "cannot hold a full-time job." (R. 870.) He further stated that Plaintiff was "always short of breath, tired, fatigued," needed to take "frequent rest breaks," and had several doctors he would need to treat with on a regular basis for his ongoing health conditions. (R. 870.) Dr. Khankari concluded: "[o]n account of all his problems, patient is unable to work 8 hours a day 5 days a week on a consistent and reliable basis without frequent interruption[,] rest breaks or abscesses (sic) due to symptoms and the treatment thereof." (R. 870.)

      The ALJ's analysis of Dr. Khankari's opinions, in its entirety, is as follows:

> The undersigned accords his opinions little weight, as they are inconsistent with medical records, and Dr. Khankari's (sic) is not a specialist regarding the claimant's impairments. Treatment notes from May of 2017 indicate the claimant had been doing well since his valve replacement surgery, with no complaints of chest pain, shortness of breath, dizziness, nausea, or vomiting, inconsistent with Dr. Khankari's 2017 opinion. In July of 2018, the claimant was recovering from surgery, and an improvement in symptoms would be expected. Furthermore, his statement that claimant is unable to work is not a medical opinion, but rather an administrative finding dispositive of the case reserved to the Commissioner and not entitled to any special significance.

(R. 94.)

## II.   Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from

performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be

5

affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III.     Discussion**

Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 416.927(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record.[2] 20 C.F.R. § 416.927(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). If the ALJ does not discuss each factor explicitly, the ALJ should

---

[2] A change to the Administration's regulation regarding weighing opinion evidence will eliminate this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5848–49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

demonstrate that the ALJ is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

The Court does not believe the ALJ articulated "good reasons" for rejecting Dr. Khankari's opinions. Regarding the 2018 Letter, the ALJ articulated two reasons for the decision to assign Dr. Khankari's opinion little weight: 1) Plaintiff was recovering from surgery in 2018 "and an improvement in symptoms would be expected"; and 2) the statement that Plaintiff was unable to work was not a medical opinion. (R. 94.) Regarding the first reason, the Court finds that there is not substantial evidence to support the ALJ's speculation that Plaintiff's symptoms would improve, and, therefore, it is not a good reason to assign little weight to Dr. Khankari's opinion. The ALJ cited no medical evidence or expert testimony to support this statement, and the Court cannot find what basis the ALJ relied on to reach this conclusion. Moreover, what evidence there is in the record does not indicate that it is a foregone conclusion that Plaintiff would improve from his surgery. In fact, the record shows that Plaintiff often did not improve from surgery, as demonstrated from his repeated need for multiple heart surgeries, and his need to be intubated, fed through a feeding tube, and multi-week inpatient stay following his 2018 surgery. Furthermore, Plaintiff's family history indicates that it is not certain that his condition will improve; Plaintiff's father died suddenly from a ruptured aortic aneurysm and also suffered from Marfan syndrome. (R. 937, 1508.) The second reason also does not stand up to scrutiny. While it is true "that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician . . . the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013.) Here, the ALJ could not simply ignore the entire Letter because it opined that Plaintiff was unable to maintain full-time employment.

7

Additionally, the Letter contained other issues that needed to be addressed by the ALJ and were not questions of law, such as Dr. Khankari's opinions regarding Plaintiff's need for continuous care that would be disruptive to any potential work schedule and his need for rest breaks due to his symptoms. None of these were reached by the ALJ, and should be considered on remand. Because the ALJ failed to give good reasons for assigning little weight to the 2018 Letter opinion from Dr. Khankari, the Court remands the case.

Even if the Court believed the ALJ had articulated good reasons for not giving controlling weight to Dr. Khankari's opinions, the ALJ failed to consider all of the requisite factors in her discussion of those opinions. The ALJ did not consider the length, nature, and extent of any treatment relationship or the frequency of examination, which are crucial factors in analyzing the evidentiary value of a treating physician's opinion. The Court does not find that the ALJ's conclusions were necessarily incorrect. Some factors weighed against assigning controlling weight to the treating physicians' opinions, and the ALJ mentioned them in the passage quoted above. However, the ALJ is not permitted to focus on the factors that favor her conclusion while ignoring the factors that cut against it. By failing to consider or acknowledge the other factors, the ALJ rendered the Court unable to adequately determine whether the ALJ appropriately weighed the treating physician opinion evidence in this case. As such, remand is required.[3]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted (Dkt. 18), the Commissioner's motion for summary judgment is denied (Dkt. 21), and the case is remanded for further proceedings consistent with this opinion.

---

[3] Because the Court remands on the bases articulated above, it does not reach the other issues raised by the Plaintiff on this appeal.

**ENTERED:**

Susan E. Cox,
United States Magistrate Judge